STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| Appeal of Monty | } | Docket Nos.    7-1-04 Vtec |
| | } | 47-3-04 Vtec |
| | } | |

## Decision and Order on pending Motion

Appellant-Applicant Al Monty appealed from two decisions of the Town of Barre (Town) Planning Commission denying Appellant-Applicant's two subdivision permit applications.  Appellant-Applicant is represented by L. Brooke Dingledine, Esq.; the Town as Appellee is represented by Bruce Bjornlund, Esq.; Interested Persons Ronald Tremblay, Paula Tremblay, W. Scott Child, Sarah Child, Reginald Orvis, Nedra Orvis, Robert Boulanger, Amy Boulanger, and Amy B. Boulanger (collectively hereinafter referred to as "Interested Persons") are represented by Robert Halpert, Esq.; Interested Person Charles Desmarais represents himself.

Mr. Monty has moved for summary judgment on Question 1 of the Statement of Questions in both appeals: "Whether the Town of Barre Planning Commission has jurisdiction to deny a subdivision permit based upon the claim that the Applicant does not have the right to install utilities in his 50′ private right-of-way?"  No other pre-trial motions are now pending before this Court.

## Factual Background

The following facts are undisputed unless otherwise noted.

1.     By deed dated August 30, 1991, Appellant-Applicant bought two of three lots owned by a Mr. Giroux.  The two lots bought by Appellant-Applicant did not have

road frontage on Richardson Road.[1]  The August 30, 1991 deed reserved a fifty-foot easement across the lot retained by Giroux, which fronted on Richardson Road, in favor of the two lots purchased by Appellant-Applicant.  The easement in this deed included the right to lay utilities, but did not speak to access.

2.      On September 24, 1991, a second deed was recorded, clarifying that vehicular traffic was permitted across the fifty-foot easement, and that the access was limited for use by no more than two single-family residences.

3.      On September 1, 1994, Appellant-Applicant purchased the remaining third lot, adjacent to Richardson Road, from Giroux.  Appellant-Applicant now owned the lot previously encumbered by the fifty-foot easements that provided for both vehicular and utility accesses to the two lots Appellant-Applicant previously purchased.

4.      On January 12, 2000, Appellant-Applicant received Planning Commission approval to subdivide the lot with road frontage (i.e.: the lot he purchased on September 1, 1994) into six lots.

5.      Appellant-Applicant sold the newly created Lot 10, containing the original fifty-foot easement, to Paula and Ronald Tremblay on June 7, 2001.  The deed conveying the land to the Tremblays contained the following language:

> Said LOT #10 is conveyed subject to a fifty (50) foot wide right-of-way easement along the common boundary line between said LOT #10 and lands now or formerly owned by Orvis.  Said right-of-way easement shall be for ingress and egress by vehicular and pedestrian traffic from Richardson Road, so-called, in the Town of Barre, to other lands and premises of the grantor herein.

6.      This easement reservation made no mention regarding utilities.

---

[1] The northerly-most of the two lots purchased by Appellant-Applicant has road frontage on School Road.

7.     On June 7, 2001, Appellant-Applicant received Planning Commission preliminary approval for his "Phase 4" subdivision permit application to subdivide the two lots without road frontage on Richardson Road into four lots. Two of the new lots, labeled Lots 17 and 18 on the "Phase 4 Site Plan" map with the handwritten date "6/7/01", were to be accessed via the fifty-foot easement across the Tremblays' parcel, and the third, northerly-most lot, labeled Lot 16 on the "Phase 4 Site Plan" map, had direct access to School Road. Lot 16 was granted preliminary approval for development, but Lots 17 and 18 had deferrals placed on them, pending the submission of site plans for those two lots.

8.     On July 23, 2001, the Planning Commission issued conditional final approval to Appellant-Applicant for his "Phase 4" four-lot subdivision.

9.     On August 5, 2003, Appellant-Applicant filed his application (No. P-03-08-24) to create a new four-lot subdivision, by further subdividing Lots 17 and 18 (i.e.: the two lots accessed by the fifty-foot easement). The Planning Commission deemed this application substantially complete on August 8, 2003.

10.     The Planning Commission held a warned public hearing on subdivision application No. P-03-08-24 on November 12, 2003, at which time the Planning Commission voted unanimously to deny the application. The Planning Commission stated in its written decision of December 10, 2003 that the lots being proposed did not conform with the Town's Code of Ordinances, specifically Subdivision Regulations §§ 202, § 401, and § 406(A); Zoning Ordinance Art. III, § 3.4(B) and Art. IV, § 4.7; and Chapter 8, Article III, § 8-82 of the Town Code. The basis of all these nonconformities was the ambiguity or absence of an explicit right to lay sewer and utility lines from the land-locked lots to Richardson Road.

11. On January 8, 2004, Appellant-Applicant appealed to this Court the Planning Commission's denial of his application for a four-lot subdivision. This appeal was assigned Docket No. 7-1-04 Vtec.

12. On December 24, 2003, Appellant-Applicant filed an application, No. P-03-12-34, for revised final approval of the previously approved two-lot subdivision. The purpose of the request for revised final approval was to lift the deferral placed on the two lots accessed by the fifty-foot easement as part of the previous preliminary and final approvals of the "Phase 4" subdivision.

13. On January 14, 2004, the Planning Commission held a warned public hearing on Appellant-Applicant's application for revised final approval of the previously approved two-lot subdivision, No. P-03-12-34. The Planning Commission voted unanimously to deny the application and issued its written decision on February 11, 2004. The Planning Commission again provided as explanation for its denial that the lots proposed for development would be nonconforming, due to the ambiguity concerning the easement.

14. On March 12, 2004, Appellant-Applicant appealed the Planning Commission's denial of his application for revised final approval of a two-lot subdivision to this Court. This appeal was assigned Docket No. 47-3-04 Vtec.

## Discussion

On December 10, 2003, in Docket No. 7-1-04 Vtec, the Planning Commission denied Appellant-Applicant's application for a four-lot subdivision of two lots (Lots 17 and 18 in the "Phase 4" site plan map), located south-easterly of the intersection of Richardson Road and School Road in Barre. On February 11, 2004, the Planning Commission denied Appellant-Applicant's application for revised final approval to develop Lots 17 and 18, which had deferrals placed on them at earlier stages of the permitting process. None of these lots have road frontage.

4

Appellant-Applicant proposes that access to the lots for vehicular and pedestrian traffic and for sewage and utility lines will travel across the fifty-foot right-of-way easement Appellant-Applicant retained when he sold the land lying between the lots and Richardson Road to Interested Persons Ronald and Paula Tremblay. In its denial of both applications, the Planning Commission found that there was "ambiguity as to sewer service" and that therefore Appellant-Applicant had not met his burden of showing compliance with the Town's subdivision regulations.

It appears that Appellant-Applicant has created his own quandary by selling the land between his proposed subdivision and Richardson Road, without retaining a clear right to lay utilities and sewer lines across the sold land. In fact, Appellant-Applicant does not appear to offer any specific evidence to support his apparent assertion that he has the right to lay the proposed utilities in the right of way he retained when he conveyed the encumbered parcel to the Tremblays. In drafting the easement he retained, he made specific mention of access, but no mention of the right to lay sewer or utility lines. Given the history of this easement, and the previous specific reference to sewer and utility line usage within it, we cannot disregard the omission in Appellant's present applications of any specific authority to lay sewer and utility lines over property owned by an abutter.

Appellant-Applicant offers no authority to use the retained right of way as he proposes. His position does not appear to this Court to be much different than that of an applicant who proposes to develop property that he does not own, and to which he has no other right.

Any applicant bears the burden of demonstrating compliance with the Town's Zoning Ordinance and Subdivision Regulations, including Subdivision Regulations § 415(A), which states that "[w]here inclusion of utilities are not to be in the street right-of-way, a perpetual, unobstructed easement shall be provided with satisfactory access

5

to the street." Regulations § 415(A). The Planning Commission based both denials on a finding that the plans submitted by Appellant-Applicant were ambiguous as to sewer service. The Commission therefore concluded that Appellant-Applicant had not carried his burden of showing compliance with the applicable regulations.

Appellant-Applicant argues that the Planning Commission exceeded its jurisdiction when it went beyond an uncritical acceptance of his plans by questioning whether utilities and sewer lines could in fact be located in the fifty-foot right-of-way easement. Appellant-Applicant attempts to distinguish our holding in Appeal of Cole, Docket No. 174-10-01 Vtec (Vt. Envtl. Ct., May 12, 2003), on the ground that while the subdivision regulations at issue in Cole "required access by a private street, permanent easement or right-of-way. . . .[n]o such right-of-way requirement exists in the Barre Town Ordinances." Appellant-Applicant's Mot. for Summ. J. at 3. However, as noted above, the Barre Town Subdivision Regulations require at § 415(A) that "[w]here inclusion of utilities are not to be in the street right-of-way, a perpetual, unobstructed easement shall be provided with satisfactory access to the street." As Lots 17 and 18 do not have street frontage, the easement requirement for utility access in § 415(A) applies.

This Court has previously addressed the delicate balance between assuring that applicants meet their threshold burden of proving compliance with the applicable municipal regulations and our lack of jurisdiction over property rights disputes. In addition to the Cole case, this Court has recently commented on this same legal issue in the following two appeals: Appeal of Van Nostrand, Docket Nos. 209-11-04 Vtec and 101-5-05 Vtec (Vt. Envtl. Ct., Jan. 13, 2006) ("[T]he Environmental Court is not vested with the jurisdiction to determine the parties' respective private property rights to land or easements that benefit or encroach upon their property, including the extent of the right-of-way's use. We intend only to determine whether Appellant-Applicants have met their threshold burden of evidencing their interest and right in the property for

6

their proposed development. Any further claims to title, or claims attacking the same, must be presented to the appropriate Superior Court for adjudication."); and Appeal of Bowman, Docket No. 70-5-90 Vtec (Vt. Envtl. Ct., June 21, 2005) ("Although the Environmental Court does have jurisdiction to determine whether a permit applicant has met all the requirements of the zoning ordinance, including whether the permit applicants have met their burden of proof that they have access to their property over an easement of a certain minimum width, it does not have jurisdiction to determine the underlying property rights of the affected parties."). We see no reason in these appeals to differ in our analysis.

In the present appeals, neither the Planning Commission, nor this Court, has jurisdiction to determine the attributes of Appellant-Applicant's right-of-way easement, including whether Appellant-Applicant has the right to lay utility and sewer lines to his proposed development. In the proceedings below, the Planning Commission did not determine that Appellant-Applicant lacked the right to lay utility and sewer lines in his right-of-way easement. Rather, the Planning Commission based its denials on Appellant-Applicant's failure to show that his lots had the sewer and utility access required by Regulations § 415(A).

A determination that an applicant has not demonstrated the existence of the required access is not a determination no such access exists. Because the Planning Commission did not determine the property rights of Appellant-Applicant in relation to abutters, but rather determined that Appellant-Applicant had not carried his threshold burden of showing compliance with the Subdivision Regulations, the Planning Commission acted within its jurisdiction.

Based upon the evidence presented in this proceeding, we have made our own independent determination that Appellant-Applicant has thus far failed to meet his threshold burden of presenting evidence that his proposed subdivision complies with

7

the dictates of Regulations § 415(A). We therefore determine that Appellant-Applicant's Motion for Summary Judgment should be denied by answering his first Question in the affirmative: an appropriate municipal panel does have the authority to deny an application based upon a determination that an applicant has not met their threshold burden of showing compliance with applicable ordinance provisions.

There remains some question as to how Appellant-Applicant intends to meet his threshold burden at a *de novo* merits hearing before this Court. To the extent that Appellant-Applicant does not intend to present further evidence of his proposed development's compliance with Regulations § 415(A), we ask that he immediately give notice of the same to all parties and this Court. In the event that no new evidence will be presented, the Court will entertain a motion to dismiss these appeals.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Appellant-Applicant's Motion for Summary Judgment is DENIED. This matter shall now proceed to a hearing on the merits, which shall be scheduled pursuant to separate notice by the Court Manager.

Done at Berlin, Vermont, this 24th day of January, 2006.

_____
Thomas S. Durkin, Environmental Judge